**UNITED STATES of America, Appellant,**

v.

**Miguel MERCEDES, Elynson Matos, aka "Tony," Miguel Caro, Rogelin Florian, Bobby Maldanado, Defendants.**

**Albert Rios, Danielle Bautista, Roberto Roman, Defendants–Appellees.**

**Docket No. 01–1105.**

United States Court of Appeals, Second Circuit.

Argued April 9, 2001.

Decided June 27, 2001.

Dwight C. Holton, Assistant United States Attorney, (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellant.

Neil B. Checkman, New York, NY, for Defendant–Appellee, Roberto Roman.

Allen Lashley, Brooklyn, NY, for Defendant–Appellee, Albert Rios.

David H. Weiss, New York, NY, for Defendant–Appellee, Danielle Bautista.

Before WALKER, Chief Judge, McLAUGHLIN and SOTOMAYOR, Circuit Judges.

PER CURIAM:

■ The United States appeals from a February 23, 2001 order of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge* ), affirming Magistrate Judge Robert Levy's release of Roberto Roman, Danielle Bautista, and Albert Rios on bail pending trial. On February 8, 2001, the defendants-appellees were arrested for conspiracy to commit armed robbery in violation of 18 U.S.C. § 1951, and possession of a weapon in connection with that offense in violation of 18 U.S.C. § 924(c). Magistrate Judge Levy ordered Roman, Bautista, and Rios released on $200,000 bonds secured by cash deposits of $15,000, $10,000 and $5,000, respectively. On March 6, 2001, we granted the government's motion to stay the release order pending resolution of this appeal. The government contends that the appellees failed to present sufficient evidence to rebut the statutory presumption favoring detention that arises in this case. *See* 18 U.S.C. § 3142(e). We review the district court's decision granting release on bail pending appeal for clear error. *See United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985). We now reverse.

## BACKGROUND

On February 8, 2001, the three defendants-appellees were arrested as part of a government sting operation targeting a violent gang led by co-defendant Elynson Matos, who is not a party to this appeal. According to the government, a confidential informant proposed that Matos and his crew hijack a shipment of drugs and split the proceeds. The government asserts that at trial, it will prove that Matos accepted the proposal and assembled several men, including the defendants-appellees, to complete the operation. According to the confidential informant, Matos planned to accomplish the robbery by using a crew of people, several of whom would pose as law enforcement officers. During a taped meeting between Matos and the informant, Matos explained that his cousin could sell the drugs after they had been stolen. On February 8, agents of the U.S. Drug Enforcement Agency ("DEA") established surveillance at Matos's residence, and at the appointed location for the robbery in Brooklyn. The surveillance agents saw eight men leave Matos's residence in three separate cars, after the informant called with the location of the robbery target, and saw them drive by the appointed place looking for the van that was supposed to be highjacked. After they drove repeatedly past this location, DEA agents arrested the defendants. Bautista was driving one of the cars. Rios was driving another, in which Roman was a passenger, and in which agents found several loaded guns, two law enforcement badges, and a pair of handcuffs.

Pre–Trial Services ["PTS"] recommended that Roman and Bautista be detained pending trial, but that Rios be released on "substantial bond."

## DISCUSSION

The government contends that the district court erred in granting release pending appeal to the appellees, because they failed to present sufficient evidence to rebut the statutory presumption favoring de-

tention. We agree, and find that the government met its burden of proving that all three appellees pose either a danger to the community or flight risk, or both.

Because the appellees have been indicted for violating 18 U.S.C. § 924(c), a statutory presumption in favor of detention arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991) (presumption of dangerousness); *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir.1986) (presumption of risk of flight); *Chimurenga*, 760 F.2d at 405. Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. *See Martir*, 782 F.2d at 1144.

Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community. *See Rodriguez*, 950 F.2d at 88. The government retains the ultimate burden of persuasion by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight. *See Martir*, 782 F.2d at 1146; *Chimurenga*, 760 F.2d at 405–06.

To determine whether the presumptions of dangerousness and flight are rebutted, the district court considers:

(1) the nature and circumstances of the crime charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including family ties, employment, community ties, past conduct;

(4) the nature and seriousness of the danger to the community or to an individual.

*See* 18 U.S.C. § 3142(g).

We address each defendant in turn.

## I. Roman

The district court found that the government failed to meet its burden of proving Roman a danger to the community given his consent to electronic monitoring and other bail conditions. It also found that the government failed to meet its burden of demonstrating that Roman was a substantial flight risk, given his U.S. citizenship. The government contends that Roman came forward with no evidence whatsoever to rebut the statutory presumption favoring detention. Moreover, the government asserts broadly that any showing of strong community ties, a substantial bond, or electronic monitoring cannot rebut the presumption of dangerousness, though it may be relevant to the issue of flight risk.

We agree with the government that these factors cannot outweigh the presumption of dangerousness in this case, and reverse the order granting Roman's release. We need not address the broader question of whether these showings can ever rebut the presumption of dangerousness.

We have expressly held in several cases that a bail package that might "reasonably assure the appearance of [the defendant] at trial, will not reasonably assure the

safety of the community." *Rodriguez,* 950 F.2d at 89; *see also United States v. Orena,* 986 F.2d 628, 632 (2d Cir.1993) (reversing grant of bail to defendants indicted on RICO charges based upon murder, conspiracy to murder, loansharking, and illegal weapons possession, and holding that electronic monitoring, house arrest and interactions limited to family would not "alleviate [Amato's] danger to the community"). In this case, as in *Rodriguez,* electronic monitoring, home detention and assurances by Roman's fiancee that he will comply with the requirements of pretrial release are insufficient in the face of strong evidence that Roman presents both a danger to the community and a flight risk.

First, the nature of the crime with which Roman has been charged—conspiracy to commit armed robbery of a drug-dealer—weighs heavily against release. Second, the evidence against Roman is strong. Loaded guns, as well as fake police badges and handcuffs, were found in the car in which Roman was a passenger. The district court found that it was "more likely than not that [Roman] would have been one of the perpetrators to brandish a weapon and impersonate police officers...." In addition to the crime charged here, Roman has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.

In addition, Roman presents a substantial flight risk. Although Roman is a U.S. citizen, whose siblings and fiancee signed as suretors, we believe the government met its burden of proving flight risk. Notably, Roman violated the conditions of a prior release imposed as part of the sentence for his past convictions. Although Roman contends that the conditions of his probation in that case were not as stringent as those here, we remain unpersuaded. While we recognize that for those individuals who have offered security on Roman's behalf this is a large amount of money, we find that it is not sufficient to guarantee his presence at trial. We therefore reverse the grant of pre-trial release to Roman.

## II. Rios

The district court found that the government failed to meet its burden of demonstrating that Rios was a danger to the community or a flight risk given his U.S. citizenship, his lack of a criminal history, his strong ties to his suretors, the fact that he is employed, and that he is otherwise without substantial financial resources. PTS recommended release on substantial bond. We agree with the government that the district court clearly erred in ordering Rios's release.

As with Roman, the nature of the charged offense presents a high risk of violence, and the evidence implicating Rios is significant. The government will present evidence at trial that Rios was driving the car in which loaded guns, handcuffs, and fake police badges were found. While Rios has no prior criminal history, a factor weighing in his favor, Rios has a history of domestic violence. While we have never explicitly held that prior acts of domestic violence are relevant to a determination of dangerousness, we have cited with approval a case from another circuit which noted that "we reject [defendant's] suggestion that his acts of 'domestic' violence do not support a finding of dangerousness to the community. A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others." *United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir.1990) (cited

with approval in *Rodriguez*, 950 F.2d at 88).

For these reasons, we reverse the grant of release to Rios.

### III.  Bautista

The district court determined that the government failed to meet its burden of demonstrating Bautista's danger to the community by clear and convincing evidence.  The court relied upon the facts that Bautista had no prior criminal record and that no weapons or contraband were found in the car in which he was arrested.  The district court determined that the government also failed to meet its burden of demonstrating flight risk by a preponderance of the evidence notwithstanding his being a citizen of the Dominican Republic, as he is a legal permanent resident of the United States and has consented to electronic surveillance and home monitoring.

While we agree with the district court that Bautista's lack of criminal record weighs in favor of release, we nonetheless reverse.  We find that the government met its burden of demonstrating that Bautista presents a substantial flight risk.  Importantly, Bautista is not employed, and he is not a U.S. citizen.  Given the small amount of money assessed as a surety here, and given the potential sentence that Bautista faces, the risk that he may flee weighs strongly against his release.  In addition, as with Roman and Rios, there is significant evidence linking Bautista to the violent crime for which he has been indicted.  Although there were no guns or fake badges in the car in which Bautista was riding, he was found at the appointed place and time of the robbery, with the others who were involved in this potential drug heist.  For these reasons, we reverse the grant of bail to Bautista.

* Amended Per Court's Order of 12/19/00.

### CONCLUSION

For the foregoing reasons, the order of the district court granting the defendants-appellees pretrial release is hereby reversed and release denied.