**UNITED STATES of America,**

v.

**Dennis KATONA, et al., Defendant(s).**

**No. CR 02–305(LDW)(ETB).**

United States District Court,
E.D. New York.

May 7, 2002.

Leonard Lato, Office of U.S. Attorney, Central Islip, NY, for U.S.

Mark D. Lancaster, Karsh & Lancaster, L.L.P., Pittsburgh, PA, for Dennis Katona.

## ORDER

BOYLE, United States Magistrate Judge.

The defendant Groff has applied for release on bail pending trial. Ten persons were shot and one person was killed, albeit all Pagans, in the melee that occurred when numerous Pagans entered the Vanderbilt Hotel in Plainview on February 23, 2002 and began their assault on members of the Hell's Angels Motorcycle Club who were conducting an exhibit of motorcycles and motorcycle equipment and paraphernalia, including tattoos, which was open to the public. The defendant Groff was one of the Pagans who entered the hotel and was injured by gunfire during the armed attack.

The indictment herein—racketeering—is a crime of violence. *See* Count Two (Assault at the Vanderbilt) 18 U.S.C. § 1959(a)(3). Firearms, knives and other weapons—such as axe handles—were used to inflict serious bodily harm. This is not the first incident of violence by numbers of the Pagans in the Eastern District of New York. Acts of violence supporting a racketeering indictment occurred in 1996 and 1997 and led to the indictment and prosecution of 33 members of the Pagans charged with "involvement in a large scale national criminal enterprise". *United States v. Desena, et al.,* 287 F.3d 170, 176 (2d Cir.2002). As in the prior prosecution, this indictment too "stems from the Pagans' efforts to keep the Hell's Angels out of Long Island ...." *Id.*

This is a presumption case due to the use of guns—18 U.S.C. § 924(c). *See United States v. Mercedes,* 254 F.3d 433 (2d Cir.2001); *see also, U.S. v. Sias,* 227 F.3d 244 (5th Cir.2000). Thus a rebuttable presumption arises that the defendant is a danger to the community and presents a risk of flight.

■ This was a call to arms by the national Pagans Club to clubs located in Pennsylvania, Ohio, Virginia and Delaware. The troops were marshaled to Plainview, Long Island for the purpose of assaulting members of the Hell's Angels. That deadly force would be used in this assault is evident from the weapons and bullet proof vests recovered in the vans in which the defendants were riding, and is evident from the hallographic wills offered into evidence to show the awareness of the use of deadly force and the possibility that death might occur to some of the participants. There were approximately 700 persons in the hall at the time of the assault— the vast majority of whom were men, women and children simply attending the show as part of the general public. They were placed in grave danger by the mass assault by the Pagans upon the Hell's Angels.

The government has established the element of danger to the community by clear and convincing evidence. The defendant Groff, under the government's proffer, and

as confirmed by the defendant's hospitalization and gunshot injuries received during the attack inside the hall, was one of the relatively small number of Pagan members who initially entered the hall and initiated the armed assault.

None of the numerous family and community members who vouched for the defendant had any knowledge of the incident that occurred in Plainview that gives rise to this indictment. Accordingly their view of the defendant as a peaceful person, does not adequately rebut in the Court's view the presumption of danger to the community arising from the use of firearms, as set forth in Count Three of the indictment. 18 U.S.C. § 924(c)(1)(A)(iii). The defendant Groff came from Lancaster Pennsylvania. He is one of the gang of Pagan members drawn from several states who converged on Long Island, initially assembling at a bar in Lindenhurst, and then proceeding in caravan style to the Vanderbilt Hotel in Plainview on February 23, 2002 where the armed assault occurred.

What cannot be denied is that the defendant, Groff "was found at the appointed place and time ... with others who were involved...." *See Mercedes,* 254 F.3d at 438, in the assault that took place within the hall. The government's proffer adequately establishes that Groff traveled from his home in Lancaster, Pennsylvania for the purpose of participating in the use of deadly force against the Hell's Angels.

In addition, it is noted that there is a conspiracy charge. *See* Count One, Conspiracy to Commit Assault, 18 U.S.C. § 1959(a)(6). The government relies on the Pinkerton theory. *See* government letter memorandum, dated February 26, 2002 at 3–4, n.1. Therefore, any substantive offenses committed in furtherance of the conspiracy by co-conspirators in carrying out the plan may be imputed to all other members of the alleged conspiracy.

For the foregoing reasons, the government has met its ultimate burden of persuasion, by clear and convincing evidence, that the defendant Groff presents a danger to the community. The bail package proposed for the defendant "will not reasonably assure the safety of the community." *United States v. Rodriguez,* 950 F.2d 85, 89 (2d Cir.1991); *United States v. Orena,* 986 F.2d 628, 632 (2d Cir.1993).

■ Lastly, release at this time on due process grounds, *See United States v. Wadih El–Hage,* 213 F.3d 74, 79–81, (2d Cir.2000) is denied as premature since the defendant has only been confined for two and one half months and the district court is in the process of establishing a schedule for the trials herein.

For the foregoing reasons, the application to vacate the prior order of detention and to release the defendant on bail is denied.

SO ORDERED.