**UNITED STATES of America**

v.

**Jimmy Lee BARNER, Defendant.**

**No. 08–CR–170 (S)(M).**

United States District Court,
W.D. New York.

Oct. 8, 2010.

Joseph M. Tripi, U.S. Attorney's Office, Buffalo, NY, for United States of America.

## DECISION AND ORDER

JEREMIAH J. McCARTHY, United States Magistrate Judge.

Before me is defendant's motion for release from custody [83],[1] which has been referred to me by Hon. William M. Skretny "for detention hearing and resolve" [88]. A detention hearing was held before me on September 30, 2010. For the following reasons, and on the following conditions, the motion is granted.

## BACKGROUND

By Complaint dated February 20, 2008[1], defendant was charged with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The felonies for which he was previously convicted were for violation of N.Y. Penal Law §§ 160.05 and 160.10 (second and third degree robbery).

At his initial appearance on February 28, 2008, the government moved for pretrial detention pursuant to 18 U.S.C. § 3142(f), arguing that defendant posed a

---

1. Bracketed references are to CM–ECF docket entries.

risk of flight and a substantial risk of danger to other persons and the community. Because he was subject to a state detainer at that time, defendant waived his right to a detention hearing, while reserving his right to request a hearing at a later date upon changed circumstances [5, 8]. By indictment dated July 10, 2008[24], defendant was again charged with violating 18 U.S.C. § 922(g)(1), as well as 18 U.S.C. § 924(a)(2) (in that he knowingly violated § 922(g)(1)). Following his arraignment on July 22, 2008, he again waived a detention hearing as he was still in state custody, and again reserved his right to request a hearing at a later date based upon changed circumstances [26, 28].

Defendant thereafter moved to suppress the evidence (including firearms and ammunition) seized during the search of a storage room adjacent to his apartment [30]. Following an evidentiary hearing, in a Report, Recommendation and Order dated May 5, 2010[66], I concluded that defendant had not consented to the warrantless search, and recommended that the evidence be suppressed. After hearing the government's objections [71], Judge Skretny adopted my recommendation by Text Order dated August 19, 2010[80]. The government has appealed the suppression order pursuant to 18 U.S.C. § 3731[84].

Defendant now moves for release from custody [83]. He argues that unless the government prevails on appeal, the charges against him must be dismissed [*id.*, ¶ 8]. He notes that at the present time, all state charges have been resolved, and that with the exception of the indictment in this case, there are no other criminal charges or detainers pending against him [*id.*, ¶¶ 12–14]. He requests release "with whatever conditions the Court deems appropriate pending the outcome of

[the government's] appeal", including house arrest and electronic monitoring if necessary [*id.*, ¶¶ 15, 25].

Responding to the motion, the government argues that defendant has failed "to rebut the presumption contained in [18 U.S.C. § 3142(e)] that the defendant is both a flight risk and a danger to the community", that he "has a significant criminal record", and that he "will be facing a guideline range of 110–137 months" if convicted [86, ¶¶ 2, 3]. While the government "firmly believes the suppression issues in this case were wrongly decided" and will be reversed on appeal (*id.*, ¶ 5), it conceded during the hearing that if its appeal of the suppression order is unsuccessful, the indictment must be dismissed.[2] Pretrial Services continues to recommend detention, arguing that defendant still poses a risk of flight and danger to the community (see Tina E. Blackman Memorandum dated September 23, 2010).

Following the detention hearing, the government submitted an additional letter brief in support of its position that detention continues to be warranted [92].

## ANALYSIS

### A. Defendant's Right to Seek Reconsideration of his Detention

My two previous detention orders [8, 26] gave defendant the right to request a detention hearing at a later date. At the September 30 hearing, the government conceded that the order suppressing evidence entitles defendant to seek reconsideration of his detention. *See United States v. Shareef,* 907 F.Supp. 1481, 1483 (D.Kan.1995) ("Suppression of all the evidence in the case is information that may

---

**2.** "Dismissal of the indictment is the proper sanction … when the only evidence against [the defendant] was seized in violation of the Fourth Amendment." *United States v. MacDonald,* 435 U.S. 850, 861, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).

from the basis upon which a detention hearing may be reopened").

However, in its post-hearing brief, the government suggests that the court "must assess the bail factors present in this case as it would in the first instance (i.e., as though there were no suppression rulings or government appeal pending)" [92, p. 3]. I disagree. In determining whether defendant's motion should be granted, my focus is not on whether the previous orders of detention were proper when made, but whether detention continues to be warranted at *this* time. "The [Bail Reform Act], by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward." *United States v. Madoff,* 586 F.Supp.2d 240, 250 (S.D.N.Y.2009).

## B. Standard for Detention

18 U.S.C. § 3142(e) states that "[i]f, after a hearing ..., the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial".

■ The government "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community". *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Pryce,* 2005 WL 464945, *6 (W.D.N.Y.2005) (Skretny, J.). "[T]his standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985). As to risk of flight, "[t]he government retains the ultimate burden of persuasion by the lesser

standard of a preponderance of the evidence". *Mercedes,* 254 F.3d at 436; *Pryce,* 2005 WL 464945, *6.

"The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g)." *United States v. Salerno,* 481 U.S. 739, 751–52, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Pryce,* 2005 WL 464945, *3. Before considering these factors, I will first address the government's arguments concerning the presumption under 18 U.S.C. § 3142(e) that no conditions of release can reasonably assure against the risk of flight or danger to the community.

### 1. Does the Presumption Under § 3142(e) Apply in this Case?

■ While conceding defendant's right to seek reconsideration of his detention, the government argues that defendant "is presently detained after failing to rebut the presumption contained in Title 18, United States Code, Section 3142(e), that the defendant is both a flight risk and a danger to the community". Government's response [86], ¶ 2. Since defendant had not previously contested his detention, until now there has been no need for me to determine whether the presumption even applies in this case. I conclude that it does not.

The types of crimes which trigger the presumption are enumerated in § 3142(e). Although a violation of § 922(g)(1) is a "crime of violence" which entitles the government to request detention under § 3142(f)(1)(A) (*see United States v. Dillard,* 214 F.3d 88 (2d Cir.2000), *cert. denied,* 532 U.S. 907, 121 S.Ct. 1232, 149

L.Ed.2d 141 (2001)), neither of the charges in the indictment (18 U.S.C. §§ 922(g)(1) and 924(a)(2)) are listed among the offenses which trigger the presumption under § 3142(e).

At the hearing, the government argued that the presumption is triggered under § 3142(e)(2), in that the state offenses for which defendant were convicted were the equivalent of a federal "crime of violence". However, § 3142(e)(2) contains three subparagraphs (§ 3142(e)(2)(A),(B), and (C)), *all* of which must be satisfied in order for the presumption to arise.[3] Whether or not the requirements of subparagraphs (A) and (C) have been satisfied, there is no indication in the record that the offenses for which defendant was convicted in state court were "committed while [he] was on release pending trial for a Federal, State, or local offense", as required by subparagraph (B).

Since the government's post-hearing brief [92] suggests no other basis for triggering the presumption under § 3142(e), I conclude that the presumption does not apply in this case. Therefore, the government must prove its entitlement to continued detention by addressing the § 3142(g) factors *without* benefit of the presumption.

## C. The § 3142(g) Factors

■ "Determining the weight to be accorded to each factor in reaching the ultimate finding as to the existence of conditions is the special province of the trier of fact", *United States v. Shakur,* 817 F.2d 189, 196 (2d Cir.1987), *cert. denied,* 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987), "bear[ing] in mind that it is only a limited group of offenders who should be

denied bail pending trial". *Id.* at 195. In light of those considerations, I will apply each of the § 3142(g) factors:

### 1. The Nature and Circumstances of the Offense Charged

The indictment charges defendant with crimes of violence. The government argues that the indictment "cannot be challenged on the ground that it is based on inadequate or incompetent evidence", and that it establishes "probable cause that the defendant committed the crimes enumerated therein". Government's Post–Hearing Brief [92], p. 2; *see also United States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985) ("a grand jury indictment cannot be undermined by an independent judicial determination finding no probable cause in the context of a detention hearing").

I agree that the suppression order does not affect the validity of the indictment at the time it issued.[4] However, the weight to be given this first factor, now that the evidence against defendant has been ordered suppressed, presents a different question. "[U]nless that order is reversed on appeal, there is insufficient evidence to proceed to trial against defendant on the charge in the indictment.... [T]he change in circumstances wrought by the granting of the motion to suppress raises a question about the continuing reliance on the nature of the charge itself." *United States v. Espinoza,* 2009 WL 3614849, *2 (E.D.Cal. 2009).

Therefore, notwithstanding the fact that defendant faces a lengthy prison term if convicted, at the present time the likelihood of reversal of the suppression order

---

**3.** While the government suggested that the three subparagraphs may be read in the disjunctive, the use of the word "and" at the end of subparagraph (B) means that they are conjunctive.

**4.** *See United States v. Pina–Aboite,* 97 Fed. Appx. 832, 835 (10th Cir.2004) (unreported decision) ("The probable cause determination ... was made when [defendant] was initially indicted.... The suppression order does not impact the probable cause determination").

necessary for conviction appears to be so slim (*see* discussion at pp. 230–32, *infra*) that this factor does not weigh in favor of continued detention.

## 2. The Weight of Evidence Against the Defendant

Some courts have held that evidence which is being suppressed for purposes of trial may nevertheless be considered in evaluating the "weight of the evidence" factor under § 3142(g). *See Pina–Aboite,* 97 Fed.Appx. at 835 ("In a detention hearing, the district court is permitted to consider the evidence sought to be suppressed as if it were admissible"); *United States v. Jay,* 261 F.Supp.2d 1235, 1240 (D.Or.2003) ("A court should have as much information as possible to evaluate properly whether a defendant poses any risk of danger to the community if released. Thus, even though this Court suppressed evidence for purposes of trial, that evidence may speak loudly concerning community safety because it involves convicted felons in unlawful possession of multiple weapons and cocaine").

Notwithstanding these authorities from other circuits,[5] for the following reasons I conclude that the suppressed evidence should be given little or no weight in applying this factor. In deciding to consider the suppressed evidence for purposes of pretrial detention, the court in *Jay* applied a "cost-benefit" analysis, citing *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984): "The court concludes ... [that] consideration of the suppressed evidence is warranted under cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety". *Jay,* 261 F.Supp.2d at 1240.

Recognizing that an "objectionable collateral consequence" of the exclusionary rule "is that some guilty defendants may go free", the Court in *Leon* held that the rule should be "modified to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment". *Id.* at 907, 909, 104 S.Ct. 3405. However, the Court cautioned that did not intend to undercut, "in the absence of a more efficacious sanction, the continued application of the rule to suppress evidence from the prosecution's case where a Fourth Amendment violation has been substantial and deliberate". *Id.* at 908–09, 104 S.Ct. 3405.

More recently, in *Herring v. United States,* 555 U.S. 135, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009), the Court acknowledged that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct", and stated that the rule should continue to apply where the conduct at issue is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system". *See also United States v. Julius,* 610 F.3d 60, 68 (2d Cir.2010) ("We emphasize that *Herring* should not serve as an enticement for law enforcement personnel to depart from search procedures which comply with the Fourth Amendment. Rather, *Herring* requires careful consideration by district courts of whether the goal of deterring violations of the Fourth Amendment outweighs the costs to truth-seeking and law enforcement objectives in each case").

The government has already had two bites at the apple in arguing that suppression is not warranted: it failed to convince

---

**5.** Counsel have not cited, and I have not found, any Second Circuit authority on this issue.

me, and then it failed to convince Judge Skretny on a *de novo* review of my recommendation, even after raising additional arguments which it had not made to me.[6] Before Judge Skretny, the government argued that the conduct of the parole officers was not sufficiently deliberate to warrant suppression because (1) "they relied on the parole consent", (2) they "acted carefully in obtaining a secondary consent", and (3) "even if the search of the storage [area] exceeded the scope of the consent, it was not accomplished in some reckless fashion ... but rather, by utilizing a key which Barner had given them". Government's objections [71], pp. 14–15.

There was ample reason for Judge Skretny's rejection of those arguments. The officers could not reasonably have relied on the "parole consent" previously executed by defendant as a condition of his release, since at the time of the search defendant was no longer released on parole, but was back in custody.[7] *See* Report, Recommendation and Order [66], p. 3. In fact, they were specifically told by their bureau chief that they could search the residence only "*//he* consents and signs consent". *Id.* (emphasis added).

Nor did the officers "act[ ] carefully in obtaining a secondary consent", since they asked defendant only for consent to search his residence, by which they meant his apartment, and there was no discussion of consenting to search the storeroom. Report, Recommendation and Order [66], pp.

3–4. In fact, the officers had no idea whether the storeroom even belonged to defendant when they decided to search it. *Id.*, p. 4.

Finally, the fact that defendant, in response to the officers' request, gave them a key ring which included the key to the storeroom as well as a key to his apartment (*id.*, p. 4) did not justify a belief that they were entitled to search the storeroom, since they had not even discussed with the defendant the possibility of searching that room, much less obtained his consent to do so.

 Given that two levels of this court have now concluded the only evidence upon which defendant could be convicted must be suppressed, what legitimate basis can there be for continuing to detain defendant? After all, the Bail Reform Act only authorizes a defendant's detention "before trial" (*see* 18 U.S.C. § 3142(e)(1)), and unless the suppression order is reversed, there will *be* no trial in this case. Defendant has already been in custody for over 2–1/2 years, and both sides agree that the government's appeal is not likely to be resolved for at least another year, or possibly longer. "[W]hen the admissibility of all evidence against defendant[ ] is questionable, as here, prolonged pretrial detention must be subjected to more careful scrutiny than might otherwise be required." *Shareef,* 907 F.Supp. at 1484–85.

---

**6.** For example, while the government did not suggest a "cost-benefit" analysis in connection with the suppression motion before me, it did raise the issue in its objections to my suppression recommendation ( [71], pp. 13–15, *citing Julius* ).

**7.** *See United States v. Franklin,* 721 F.Supp.2d 1229, 1242 (M.D.Fla.2010) ("To the extent that [the officer] somehow believed that the defendant remained on conditional release on August 24, 2006 and that he was authorized

under the terms of the Conditions of Supervision to enter the residence and conduct the warrantless search following the defendant's arrest on the violation warrant, I find that such a belief was not grounded in good faith inasmuch as no legal authority whatsoever supports such a conclusion in the circumstances of this case A state parole officer supervising an individual on conditional release should be deterred from conducting a warrantless search of the individual's residence after the conditional release ends").

Unless defendant's motion is granted, by the time the government's appeal is resolved, he will likely have been in custody for at least 44 months. In *United States v. El–Hage*, 213 F.3d 74 (2d Cir.2000), *cert. denied*, 531 U.S. 881, 121 S.Ct. 193, 148 L.Ed.2d 134 (2000), the Second Circuit noted that a defendant's "30–33 months of pretrial detention served or contemplated to be served before the conclusion of trial is extraordinary", and "weighs heavily in favor of his argument that his due process rights have been violated". *Id.* at 76, 80. Nevertheless, the court concluded that the length of detention was "justified *only* by the unprecedented scope of violence that the conspiracy of which defendant was allegedly a part inflicted on innocent victims, by the extraordinarily complex and difficult preparation needed to present this case, and, *more particularly, because the lengthy delay in bringing defendant to trial may not be laid at the government's doorstep*". *Id.* at 76–77 (emphasis added).

Here, by contrast, the delay between now and the conclusion of this case is attributable solely to the government's appeal. In order to justify defendant's continued detention now that Judge Skretny and I have both concluded that the evidence against him should be suppressed, the government must point to something more than its "firm[ ] belie[f] that the suppression issues in this case were wrongly decided" (government's response [86], ¶ 5). Since it has not done so, I conclude that this factor weighs heavily in favor of release.

### 3. Defendant's History and Characteristics

As detailed in the original and amended pretrial services reports, defendant has a troubling criminal history, with several convictions. In addition, the crimes which are the subject of the indictment in this case allegedly occurred while he was on state parole. However, he was acquitted of the most recent state charges against him, including a charge involving the firing of shots at another individual,[8] and is not currently the subject of any criminal charges or detainers, other than those in the indictment.

Defendant has two young children and a fiance, Amy Domzalski, who submitted a letter requesting his release [89]. At the hearing, both she and his former teacher, Linda McGraw of Seneca Vocational School, attested to his character and as to their belief that he has learned from his mistakes and that, if released, he will not pose a risk of flight or danger to the community. In fact, each of them has offered to pay the cost of an apartment for him, and each of them has offered to post bail in the amount of $2500 on his behalf.

Given defendant's history, I must treat these statements (which are no doubt sincere) with some level of caution. However, in conjunction with the other factors before me, including the fact that defendant has spent a significant period of time in detention and should realize that his freedom is likely if he does not again "screw up", the testimonials offered by Ms. Domzalski and Ms. McGraw help to persuade me that defendant's history and characteristics—troubling though they may be—should not prevent his release.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by the Defendant's Release

■ As stated previously, in analyzing the factors relating to continuation of de-

---

8. In its post-hearing brief, the government suggests that I should be influenced by the fact that he was indicted on the charge, not-withstanding his subsequent acquittal. [92], p. 3, n. 2. I find this argument to be singularly unpersuasive.

tention or release, I must focus not on the past, but on the future. *Madoff,* 586 F.Supp.2d at 250. "A defendant cannot be detained as dangerous under § 3142(e) ... unless a finding is made that no release conditions will reasonably assure ... the safety of the community. That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986).

In this case, the suppression order likely *reduces* any risk of flight or danger to the community. "[W]hen considering the weight of the evidence against the person, the judicial officer is to consider how the weight of the evidence would affect the person's dangerousness or risk of flight—for example, strong evidence against a person could increase their risk of flight because they believe they are likely to be convicted, and could increase the likelihood of danger to the community because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior. The Court sees no reason that the factor could not be considered in the opposite manner, if the facts are support it—i.e., that if there is little to no evidence against a person, they are less likely to pose a risk of nonappearance or to be a danger to the community." *United States v. Rice,* 2006 WL 1687749, *2 (W.D.Ky. 2006).

## D. Conditions of Release

Having considered the applicable factors under 18 U.S.C. § 3142(g), I conclude that the government has failed to prove (1) by clear and convincing evidence, that no con-

dition or combination of conditions will reasonably assure the safety of any other person and the community, and (2) by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the defendant's appearance, if defendant were to be released.

In determining which conditions of release are appropriate, I am mindful that the Bail Reform Act requires only reasonable assurance, *not* a guarantee, that the conditions will prevent danger or flight. *See United States v. Hir,* 517 F.3d 1081, 1092 (9th Cir.2008) ("the Bail Reform Act contemplates only that a court be able to 'reasonably assure,' rather than guarantee, the safety of the community"); *United States v. Tortora,* 922 F.2d 880, 884 (1st Cir.1990) ("Requiring that release conditions guarantee the community's safety would fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention").

In addition to the "standard" conditions of release (which will be discussed at our next conference), defendant:

(1) will reside in an apartment to be paid for by Ms. Domzalski and/or Ms. McGraw[9] (or by defendant when he becomes financially able to do so) which he is not to leave other than for purposes of attending school or work, court appointments or meetings with counsel, medical appointments or attendance at church services;

(2) will be subject to electronic monitoring (his release will not be effective until Pretrial Services has inspected the apartment and determined it to be to be compatible with EMS); and

---

**9.** To protect them from needless financial exposure, I suggest (but do not order) that no long-term lease be signed at least unless and until Judge Skretny and/or the Second Circuit

has had the opportunity to further stay (if so inclined) the implementation of this Decision and Order.

(3) will be required either to enroll in school or to actively seek and obtain gainful employment. Under the circumstances, I do not find that the posting of bail offered by Ms. Domzalski and Ms. McGraw is reasonably necessary to assure defendant's compliance with the conditions of his release.

## CONCLUSION

For the foregoing reasons, defendant's motion for release from custody [83] is granted, subject to the conditions previously set forth (but not earlier than October 18, 2010).[10] A further status conference to discuss the standard conditions of release and the logistics of implementing this Decision and Order will be held on October 13, 2010 at 2:00 p.m.

**SO ORDERED.**

---

10. I am staying defendant's release until that date so as to enable the government to seek review of this Decision and Order from Judge Skretny. "[G]iven that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory." *United States v. Brigham* 569 F.3d 220, 230 (5th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1013, 175 L.Ed.2d 621 (2009).