17-2035-cr, 17-2053-cr
United States v. Brennerman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of August, two thousand seventeen.

PRESENT:  PIERRE N. LEVAL,
              REENA RAGGI,
              RAYMOND J. LOHIER, JR.,
                        *Circuit Judges.*

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,

                        *Appellee*,

      v.                             Nos. 17-2035-cr
                                         17-2053-cr

RAHEEM J. BRENNERMAN,

                        *Defendant-Appellant,*

THE BLACKSANDS PACIFIC GROUP, INC.,

                        *Defendant.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANT:      MARANDA FRITZ, Thompson Hine LLP, New York, New York.

APPEARING FOR APPELLEE:      ROBERT B. SOBELMAN, Assistant United States Attorney (Nicholas Landsman-Roos, Assistant United States Attorney, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, New York.

1

Appeal from orders of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*; Richard J. Sullivan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the pretrial detention orders entered on June 26, 2017, and on June 29, 2017, are AFFIRMED.

Defendant Raheem J. Brennerman awaits trial in two cases, one charging him with criminal contempt, *see* 18 U.S.C. § 401(3), the other charging him with conspiratorial and substantive bank and wire fraud, as well as visa fraud, *see* 18 U.S.C. §§ 1343, 1344, 1349, 1546. He now appeals from orders denying him bail pending trial in each case. *See* 18 U.S.C. § 3142(e); *see also id.* § 3145(c) (authorizing appellate review of pretrial detention orders under 28 U.S.C. § 1291). The government bore the burden of putting forth sufficient evidence to support a preponderance showing that no conditions of release could assure Brennerman's presence at his trials. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Insofar as Judges Kaplan and Sullivan each concluded that the government carried this burden, we review their conclusions of law *de novo*, *see United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004), and the factual findings underlying those conclusions for clear error, *see United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). The determination that a defendant poses a risk of flight not susceptible to release conditions is "essentially factual and require[s] little, if any, legal interpretation." *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). Thus, we will not reverse such a determination "unless on the entire evidence we are left with the definite and firm conviction that a mistake has been

committed." *United States v. Sabhnani*, 493 F.3d at 75 (internal quotation marks omitted); *see United States v. Berrios-Berrios*, 791 F.2d at 250–51. That is not our view in these cases. In conducting our review, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

Brennerman was first identified as a risk of flight at his initial appearance on the criminal contempt charge before Chief Judge Colleen McMahon. That factual determination was amply supported by the court's particular findings that Brennerman lacked strong ties to the United States and had a history of deceit, both generally and particularly in his dealings with the court. Specifically, Brennerman (1) is not a United States citizen, (2) travels abroad frequently, (3) owns no property in the United States, (4) lacks ties to the Southern District of New York, (5) lacks strong family ties in the United States, (6) has used at least three different names, (7) has repeatedly misrepresented his birthplace and citizenship, (8) has had his United States visa revoked, (9) has previously disregarded court orders, and (10) made both demonstrably and arguably false representations to the court. Such challenges as Brennerman raises to these findings essentially duplicate arguments made to the district court and fail to manifest any clear error.

Despite finding that "risk of flight is a very real possibility," Chief Judge McMahon determined that release conditions could be imposed to assure Brennerman's trial appearance because he had not attempted to flee when first alerted to the contempt proceedings, and "contempt of court . . . is precisely the sort of charge where one would

3

normally admit a defendant to bail." Brennerman Ex. 4, at 51. Those conditions provided for home detention and electronic monitoring; a $500,000 bond, signed by three of Brennerman's U.S. relatives and secured by $100,000 in cash posted by him; and restricted travel within the Southern District of New York and the District of New Jersey.

After Brennerman was indicted on the pending fraud charges, which accuse him of misappropriating over $300 million obtained from financial institutions, Judges Kaplan and Sullivan, to whom the contempt and fraud cases were respectively assigned, revisited the question of whether release conditions could reasonably assure defendant's presence at trial. Both judges concluded that they could not. Adopting Chief Judge McMahon's findings that Brennerman posed a risk of flight generally, Judge Kaplan orally concluded that he was "much more" of a flight risk after the fraud indictment. Brennerman Ex. 9, at 8. Judge Sullivan was of the same view, which he detailed in a written order: "Mr. Brennerman is now charged with a much more serious crime or crimes that carry longer penalties and higher guidelines [than contempt] and make the incentive to flee, much, much greater." Brennerman Ex. 12, at 2 (internal quotation marks omitted). Judge Sullivan explained that the fraud charges exposed Brennerman to a Guidelines range of 57 to 71 months' imprisonment, which was "9 to 12 times the term he would face for the contempt charge alone." *Id.* at 3.

> Thus, the heightened severity of these charges, coupled with Defendant's substantial ties abroad—including the fact that Defendant is a foreign citizen; his ties to Nigeria, a country from which extradition is difficult if not impossible; his frequent foreign travel; the revocation of his United States visa; his limited United States ties and assets; his use of multiple names and social security numbers; and his history of false statements under oath . . . support the Court's finding that Mr. Brennerman does pose a

4

risk of flight and that there are no conditions in isolation or in combination that could secure his appearance given the changed circumstances.

*Id.* (internal quotation marks omitted). This record does not leave us with a "definite and firm conviction" that two judges were mistaken in concluding that no release conditions could reasonably assure Brennerman's appearance at trial. *United States v. Sabhnani*, 493 F.3d at 75.

In urging otherwise, Brennerman faults the government's proffer of allegedly fraudulent representations that he made to an alleged fraud victim while on bail. The government was obliged to correct some of its initial representations but, as Judge Sullivan observed, its central representation—that Brennerman "continued to engage with the alleged victim in an attempt to further this supposedly fraudulent arrangement while he was on bail—remain[ed] unaltered." Brennerman Ex. 12, at 2. Even without this concern, however, we would identify no clear error in the district courts' findings that the advent of serious fraud charges with potentially severe sentencing consequences is a changed circumstance that, together with evidence of Brennerman's foreign nationality and contacts, misrepresentation of his identity, and disregard of court orders, supports a preponderance finding that no conditions of release were reasonably likely to secure Brennerman's presence at trial.

Brennerman attempts to show that the government's evidence of fraud is insufficiently strong to support the courts' conclusions as to heightened risk of flight. *See United States v. Briggs*, 697 F.3d 98, 102 (2d Cir. 2012) (citing strength of government's evidence in finding that defendant presented substantial risk of flight).

5

Specifically, he argues that the bank referenced in the indictment to illustrate his fraud scheme is not federally insured as required to prove bank fraud, and his dealings with that financial institution took place outside the United States. Even if correct, such circumstances have no relevance to Brennerman's alleged fraudulent dealings with other banks, which include conduct in the United States, much less to the wire and visa fraud charges that have no federal-insurance element.

In challenging the district court's denial of bail, Brennerman also highlights his lack of any prior criminal record, his rental of a Las Vegas apartment since 2013, his possession of a Nevada identification card, his relatives in this country, and his satisfaction of the bail conditions imposed by Chief Judge McMahon. The argument essentially challenges the district courts' failure to accord these factors more weight than those supporting a heightened risk of flight after the fraud indictment. We accord considerable discretion to district judges in weighing competing evidence, *see United States v. Oehne*, 698 F.3d 119, 121 (2d Cir. 2012) ("'[W]here there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous.'" (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985))), and cannot identify clear error here in their preponderance finding that the record as a whole made it more likely than not that no conditions of bail would reasonably secure Brennerman's attendance at trial, *see, e.g.*, *United States v. Yannai*, 791 F.3d 226, 242 (2d Cir. 2015) (defining "preponderance of the evidence" as "which circumstance was more likely than not").

Nor is any different conclusion compelled by Brennerman's willingness to submit to electronic monitoring and home detention or by the fact that certain relatives are willing to act as sureties. *See, e.g.*, *United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (concluding that electronic monitoring and home detention were insufficient in case of defendant who posed substantial risk of flight, and reversing grant of pretrial release even though defendant's fiancée and siblings would act as sureties); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (recognizing ease with which electronic monitoring can be circumvented).

In sum, we identify no clear error in the district courts' factual findings, which were sufficient to deny him bail under 18 U.S.C. § 3142(e). We have considered Brennerman's other arguments and conclude that they are without merit. Accordingly, the district courts' detention orders are AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7