10-3258-cr, -4045-cr
USA v. English

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2010

(Argued: January 4, 2011        Decided: January 20, 2011)

Docket Nos. 10-3258-cr, -4045-cr

_____

UNITED STATES OF AMERICA,

Appellee,

- v. -

DEREK ANDRE ENGLISH and RONALD ANDERSON,

Defendants-Appellees.

_____

Before:   KEARSE, WINTER, and HALL, Circuit Judges.

Appeals from orders of the United States District Court for the Southern District of New York, Colleen McMahon, Judge, denying defendants' motions for bail pending trial, and ordering their pretrial detention pursuant to 18 U.S.C. § 3142 on grounds of risk of flight and danger to the community.

Affirmed.

SANTOSH ARAVIND, Assistant United States Attorney for the Southern District of New York, New York, New York, for Appellee.

RICHARD B. LIND, New York, New York, for Defendant-Appellant English.

RONALD RUBINSTEIN, New York, New York (Rubinstein & Corozzo, New York, New York, of counsel), for Defendant-Appellant Anderson.

KEARSE, Circuit Judge:

Defendants Derek Andre English and Ronald Anderson, who have been indicted on charges of conspiring to traffic in cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and engaging in firearms offenses, in violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), and 2, appeal from orders entered in the United States District Court for the Southern District of New York by Colleen McMahon, Judge, to whom their case is assigned, denying their applications for bail pending trial and ordering their pretrial detention pursuant to 18 U.S.C. § 3142(e) on grounds of risk of flight and danger to the community. Following their arrests but prior to the filing of the indictment and the assignment of the case to Judge McMahon, defendants had unsuccessfully applied for bail before a magistrate judge and had appealed the denial to District Judge Lawrence M. McKenna, who was then sitting as the "Part I" judge for, inter alia, certain emergency matters and preliminary criminal proceedings, see S.D.N.Y. Local Rules 3, 7(a)-(b); Judge McKenna denied their motions, finding that although the combinations of bail conditions proposed by English and Anderson, respectively, were sufficient to assure their future court appearances as required, a firearm that defendants had possessed persuaded him that these defendants posed danger to the community. In challenging the orders of Judge McMahon, English and Anderson contend principally that the judge was predisposed against their bail applications, that she impermissibly revisited Judge McKenna's finding that they posed no

risk of flight, and that they should be released in light of new information bearing on Judge McKenna's danger-based denial of their bail motions. Finding no merit in defendants' contentions, we affirm the orders of the district court.

I. BACKGROUND

All of the events described below occurred in 2010 unless otherwise noted. English and Anderson were arrested on April 28 by Drug Enforcement Administration ("DEA") agents investigating a drug-trafficking organization. According to the complaint filed on April 29 ("Complaint"), the events of April 28 included the following. DEA agents intercepted a Federal Express package containing approximately five kilograms of cocaine; the person who attempted to collect the package was arrested and agreed to become a cooperating witness ("CW"). (See Complaint ¶¶ 6-7.) Acting on information provided by the CW, the agents seized from a car belonging to one Rodney Johnson another package containing five kilograms of cocaine and a gun in a hidden compartment. (See id. ¶¶ 8(a), 10.) DEA agents also conducted surveillance of a Queens, New York, house that the CW described as a stash house for drugs, money from drug sales, and guns. (See id. ¶ 8(b).) The agents observed English, Anderson, and Johnson arrive and enter the house; when English exited carrying a bag and began to drive away, he was stopped and arrested; the bag was found to contain approximately 10 kilograms of cocaine. (See id. ¶¶ 11(a)-(c).)

After arresting English, the agents arrested Anderson and Johnson. In subsequently executing a search warrant for the house, the agents found, inter alia, "(1) two kilograms of a substance that appeared to be cocaine in the kitchen; (2) an undetermined quantity of money in the living room; [and] (3) a firearm that appears to be a machine gun with what appears to be a silencer in the hallway closet." (Id. ¶¶ 11(d)-(e).)

On April 29, English and Anderson were presented before Magistrate Judge Kevin N. Fox and moved to be released on bail. The Assistant United States Attorney ("AUSA") opposed the motions and asked that defendants be detained on the grounds that they were flight risks and posed a significant danger to the community. By letter dated May 3, 2010, the government reiterated the main allegations of the Complaint, including that the agents had found in the stash house what appeared to be a machine gun, and added, inter alia, that

> [b]oth defendant[]s have significant criminal histories, including prior narcotics felonies. Specifically, English was sentenced to a term of 10 years' imprisonment for conspiracy to traffic in cocaine and Anderson was sentenced to a term of 28 months' to 7 years' imprisonment for criminal possession of a controlled substance in the fifth degree. As a result, both defendants are facing 20[-]year mandatory minimums pursuant to 21 U.S.C. § 841(b)(1)(A). The substantial prison sentence faced by these defendants provides a considerable incentive to flee. Multiple orders of protection have been filed against Anderson, including at least one currently active such order. As memorialized in the Pretrial Services report, English tested positive for marijuana on the day he was presented on the instant charge.

- 4 -

(Letter from AUSA Michelle K. Parikh to Magistrate Judge Fox dated May 3, 2010, at 3-4.) At the May 4 hearing on the motions, the government also stated, <u>inter alia</u>, that the stash house was leased in Anderson's name and that the landlord had seen Anderson there on several occasions (<u>see</u> Joint Hearing Transcript, May 4, 2010 ("May 4 Tr."), at 4); that when he was arrested, Anderson "was running from the location" (<u>id</u>. at 5); that the search of the house revealed not only the gun and silencer, but also ammunition (<u>see</u> <u>id</u>. at 4); and that "both of these defendants have been linked through numerous sources of the DEA to a much larger narcotics conspiracy" and "have also been linked to violent activity as part of that conspiracy" (<u>id</u>. at 6).

The magistrate judge denied the bail motions. Although finding that both defendants had rebutted the statutory presumption of flight risk, <u>see</u> 18 U.S.C. §§ 3142(e), (f)(1), he concluded that in light of the large quantity of cocaine involved, the sophistication of defendants' narcotics operation, and the weapon recovered from the stash house, defendants posed a danger to the community. (<u>See</u> May 4 Tr. 25-27.)

A. <u>The Proceedings Before Judge McKenna</u>

English and Anderson appealed, and their motions came before Judge McKenna as the Part I judge on May 5. The court indicated that it was particularly concerned about the gun found in the stash house. (<u>See</u> Joint Hearing Transcript, May 5, 2010 ("May 5 Tr."), at 5.) English's attorney argued principally that

- 5 -

there was no evidence that English had been to the closet in which the gun was found; Anderson's attorney argued principally that Anderson was unarmed when arrested and that, although he leased the house, none of his personal belongings were on the premises. (See id. at 6, 16-18.) The government responded principally that it was highly unlikely that English and Anderson, handling large quantities of narcotics in the house, did not know that a machine gun, silencer, and ammunition were there. (See id. at 19.)

In response to an inquiry from the court as to why the government's letter to the magistrate judge said that the weapon found in the closet merely "appear[ed]" to be a machine gun, the AUSA stated that

> the events were developing rapidly. The agent who was swearing out the complaint had not actually seen the firearm in question. The agents who had seized it identified it as a machine gun but had not had an opportunity to test it. And so in an abundance of caution, in the event that maybe it was semiautomatic as opposed to a machine gun, a fully automatic machine gun, I characterized it as a weapon that was--that appeared to be a machine gun. . . .

> Your Honor, I understand from both agents that they have since confirmed that the gun is a MAC 11 and that is a fully automatic firearm.

(May 5 Tr. 20-21.)

After hearing additional argument, Judge McKenna stated that he viewed it as an extremely close case but concluded that the detention orders should not be disturbed. He found that the bail packages proposed by defendants were sufficiently substantial to ensure "that these defendants would be available when needed in court." (Id. at 33.) However, he found that, in

- 6 -

light of the gun found in the stash house, defendants posed a danger to the community. The court felt there was little or no

> danger of continued drug selling. I have the feeling that the bail packages would deal with that. Home confinement would deal with that. Maybe the recognition that to be caught doing even tiniest bit of drug dealing while you're under an indictment with a multi[-]kilo case might not be the smartest thing in the world to do, it might end up in front of the jury with the rest of it, would probably prevent that.
>
> Now my experience is that most people arrested and on bail for drug offenses do not, while they're on bail pending trial, continue dealing drugs. . . .
>
> . . . .
>
> The gun is the problem, in my view. From the gun you can certainly draw an inference of, somebody who possess[es] a gun--and I haven't heard anybody suggest this gun was legally possessed or it was a licensed weapon--you can always infer that the person who possesses a gun is prepared to use it for his benefit. I am aware that from many many many many cases that in the narcotics trade, the context, the guns are typically possessed not with a view to harm to the general public, but with a view to protection against other drug dealers or people who are in the trade of robbing drug dealers, which is not an uncommon situation.
>
> However, _a gun is a gun_. _A machine gun is a machine gun_. There are witnesses out there. And _I'm going to deny bail for the sole reason of the gun_. I want to make that record clear if somebody wants to appeal. It's _if the gun had not been found in the closet, I would accept these bail packages and these defendants would have been released on bail on the basis of those packages_.

(May 5 Tr. 33-35 (emphases added).)

Thereafter, the government, by letter dated May 14, 2010 ("Government May 14 Letter"), relayed to defendants, _inter alia_, a laboratory report dated May 12, 2010, from the Firearm Analysis Section ("FAS") of the New York Police Department with respect to

- 7 -

the operability of the gun found in the stash house ("NYPD Lab. Report"). The report, characterizing the gun as a semiautomatic pistol, stated in pertinent part that the weapon had

> been tested and is not operable; pistol received without hammer pin, hammer pin retainer, and sear spring holder . . . . Unable to test fire, parts unavailable in FAS . . . . Pistol has the following assault weapon characteristics: threaded barrel, copy of a SWD M-10 type pistol. Pistol also received with a barrel extender (wrapped in black tape) which does attach to the threaded barrel (overall length attached is 20 7/8").

(NYPD Lab. Report.) The government's accompanying letter stated that "certain characteristics of the firearm" found in the stash house thus "differ from the Government's understanding of those characteristics at the time of the bail hearing in this case on May 5, 2010." (Government May 14 Letter at 1-2.)

On May 16, defendants asked Judge McKenna to reconsider his gun-based denial of their bail motions "in light of dramatic new evidence" that the weapon in question was not a machine gun and was inoperable. (Letter from Richard B. Lind to Judge McKenna dated May 16, 2010, at 1.) On May 18, English and Anderson, along with Johnson, were indicted and charged with conspiring to possess five kilograms and more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); using and carrying a firearm during and in relation to a drug-trafficking crime, and possessing a firearm in furtherance of such a crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; and being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The case was assigned to Judge McMahon. On May 20,

- 8 -

Judge McKenna referred the reconsideration motions to Judge McMahon.

B.  The Proceedings Before Judge McMahon

At the initial pretrial status conference before Judge McMahon, the AUSA informed the court of the nature of the charges and stated that the amount of cocaine involved was "approximately 27 kilograms." (Joint Hearing Transcript, June 9, 2010 ("June 9 Tr."), at 2.)  English and Anderson asked the court to schedule a bail hearing.  After discussing possible dates for such a hearing, and determining that defendants had already been denied bail by the magistrate judge and Judge McKenna, Judge McMahon said "I must tell you in a 27-kilo case I don't think I've ever let anybody out.  You're free to come and make your pitch" (id. at 5).

On July 20 and 28, the court held bail hearings for Anderson and English, respectively.  At Anderson's hearing (see Hearing Transcript, July 20, 2010 ("Anderson Tr.")), his attorney emphasized the new information as to the nature and inoperability of the gun, arguing that both the magistrate judge and Judge McKenna had denied bail on the basis of the government's representation that Anderson had in his closet a machine gun and a silencer.  Judge McMahon stated that she could not review the order entered by Judge McKenna, stating "You're starting over with me."  (Anderson Tr. 3.)  However, Judge McMahon told Anderson's attorney to "forget about the gun.  I'm not going to take the gun into account.  I'm going to ignore it."  (Id.)

After hearing argument, Judge McMahon denied Anderson's application for bail. The court noted that, with respect to the crimes charged in the indictment, there is a statutory presumption against bail, and it concluded that the presumption "hasn't been rebutted in this case." (Id. at 18.) The court found that Anderson posed both a danger to the community and, notwithstanding his "incredibly strong" proposed bail package (id.), a risk of flight:

> The nature and the circumstances of the crime . . . auger against bail. The fact that the defendant is facing a 20[-]year mandatory minimum sentence gives him a tremendous incentive to flee and augers against granting bail. The weight of the evidence against the defendant is a factor that is to be taken into consideration. Defense counsel suggested it is not an important factor. As far as this Court is concerned, it is one of the most important factors to consider.

> The case against the defendant is incredibly strong. The fact that it's a triable case, from a lawyer's perspective, does not mean that it's not a strong case. Even the Court's assessment of the evidence, after seeing thousands upon thousands of these cases, it is a very strong case.

> The history and characteristics of the defendant, including his family ties, employment, community ties and past conduct cuts both ways. The defendant has a large and incredibly supportive and loving family. He has ties. He's a life[long] resident of Queens. He has ties to the community. He has been engaged in employment. Those are positive factors. He has a history with law enforcement going back to 1995. . . .

> And so as far as I'm concerned, his prior history, his past conduct cancels out the positive factors, including family ties, employment and community ties.

> The nature and the seriousness, the danger of the community or to individuals is manifest from the charge. Unlike Judge McKenna, I did not find it at

- 10 -

> all impossible to believe that someone who is, say, on electronic monitoring could not engage in further sale of narcotics. All you need is a telephone and access to a person or persons who are willing to participate in the crime.

(Anderson Tr. 16-18 (emphases added).)

At English's detention hearing (see Hearing Transcript, July 28, 2010 ("English Tr.")), his attorney, Richard B. Lind, began by arguing that Judge McMahon could not engage in a de novo consideration of whether to grant bail but could consider only how the new information about the gun affected Judge McKenna's findings, stating that he had sought only "reconsideration of Judge McKenna's order." (Id. at 2.) Lind pointed out that "[w]hen Judge McKenna ordered . . . my client detained, it was based solely on the gun" (id. at 4); "[w]ith regard to the issue of dangerousness, [Judge McKenna] said that the only issue, otherwise he would have given bail, was the issue of [the] gun, that it was a machine gun with a silencer" (id. at 3); and that "[a] couple days later the government said that the so-called machine gun was an inoperable pistol" (id. at 4). Lind stated that he had immediately asked Judge McKenna for reconsideration, but as the case was now before Judge McMahon, following the filing of the indictment, he sought reconsideration of the dangerousness issue from Judge McMahon. (See id. at 5.)

Judge McMahon stated that she understood the new information with respect to the gun and that she would not take the gun into account (English Tr. 3); but she would consider the request for bail de novo (see id. at 4). She pointed out that

"Judge McKenna and I are Judges of coordinate jurisdiction and I'm not the Court of Appeals." (<u>Id</u>. at 3.) She stated that if English merely wanted reconsideration of Judge McKenna's order he would have to seek it from Judge McKenna; if he wanted review of Judge McKenna's order he would have to go to the Court of Appeals; if he wanted a grant of bail by Judge McMahon, she would consider the request as "a totally new application." (<u>Id</u>. at 3-4.)

After hearing argument, Judge McMahon found that English presented both a flight risk and a safety risk, and thus ordered him detained:

> <u>This is a case in which the evidence is extraordinarily strong. The defendant was arrested with 10 kilograms of cocaine in his possession.</u> His co-conspirators had cars that were equipped for drug dealing and one of them had a weapon indicating that <u>there was the possibility of violence in connection with this particular incident. That, alone, would be enough for me to keep the defendant in.</u> I acknowledge that this defendant has a strong bail package, he has substantial ties to the community; however, he is looking at, I think, a 20-year mandatory minimum. . . .
>
> <u>A 20-year mandatory minimum sentence which overcomes virtually any tie to the community and gives him an extraordinary incentive to flee.</u>
>
> The defendant's conviction for narcotics in the past is indeed an old conviction but it does not give the Court any comfort that the defendant was in fact convicted and sentenced to 10 years, however long he served for narcotics, and was then later arrested with 10 kilograms of cocaine in his possession and that suggests a strong possibility of recidivism notwithstanding the defendant's strong family ties to the community. <u>The defendant tested positive for drugs[,] which raises the issue of non-appearance.</u>
>
> <u>The Court concludes that in all of the circumstances and especially given the strength of the government's case and the mandatory minimum sentence which the defendant is facing, that there</u>

are no bail packages, even this extraordinarily strong bail package[,] that would guarantee his appearance, and I am denying bail.

(English Tr. 13-14 (emphases added).)

## II. DISCUSSION

English and Anderson have appealed from Judge McMahon's detention orders and have moved in this Court for release on bail, arguing principally that Judge McMahon was required to defer to findings made by Judge McKenna except to the extent that the new information called those earlier findings into question; that the district court was improperly "predisposed" against their bail applications; and that the record warrants their release on bail. English also contends that the order for his detention should be vacated because it was not accompanied by written findings as required by 18 U.S.C. § 3142(i)(1). For the reasons that follow, we find no merit in defendants' contentions.

### A. The Statutory Framework

Section 3142 of Title 18, enacted as part of the Bail Reform Act of 1984, see 18 U.S.C. §§ 3141-3156 ("Bail Reform Act"), requires that an accused be detained pending trial where, following a hearing in accordance with § 3142(f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.

§ 3142(e)(1). "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." Id. § 3142(f)(2). In a detention order issued under § 3142(e)(1), "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention . . . ." Id. § 3142(i)(1).

Subsection (e) of § 3142 provides that there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure" against flight or danger where probable cause supports a finding that the person seeking bail committed certain types of offenses, including "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)," 18 U.S.C. § 3142(e)(3)(A), or "an offense under [18 U.S.C. §] 924(c)," id. § 3142(e)(3)(B). "[A]n indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the rebuttable presumptions set forth in § 3142(e)." United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).

Where there is such a presumption, the defendant "bears a limited burden of production--not a burden of persuasion--to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Satisfying

- 14 -

the burden of production does not eliminate the presumption favoring detention; it "remains a factor to be considered among those weighed by the district court." Id. At all times, however, "the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." Id.

Subsection (f) of § 3142 provides that, on motion of the government, a hearing must be held with respect to a detention request in a case that triggers the § 3142(e)(3) presumption, see 18 U.S.C. § 3142(f)(1), or in a case that involves "a serious risk that such person will flee," id. § 3142(f)(2)(A). Where the judicial officer perceives a serious risk of flight, a detention hearing may be held "upon the judicial officer's own motion." Id.

The factors that the judicial officer must consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," include "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," or involves a firearm; "the weight of the evidence against the person"; "the history and characteristics of the person," including his "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and "the nature and

seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The same factors are to be considered in determining "whether the presumptions of dangerousness and flight are rebutted." United States v. Mercedes, 254 F.3d at 436.

We review a district court's findings as to the accused's risk of flight and potential danger to the community for clear error. See, e.g., United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995) (danger to the community); United States v. Melendez-Carrion, 820 F.2d 56, 61 (2d Cir. 1987) (risk of flight). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985). We review rulings of law de novo, and "the court's ultimate finding may be subject to plenary review if it rests on a predicate finding which reflects a misperception of a legal rule applicable to the particular factor involved," United States v. Shakur, 817 F.2d 189, 197 (2d Cir.), cert. denied, 484 U.S. 840 (1987).

B. The Contention that Judge McMahon Was Barred from Considering Flight Risk

Defendants' principal contention on these appeals is that because Judge McKenna had stated that the bail packages proffered by defendants were sufficient to assure against risk of flight, and that he would grant their bail motions were it not for the gun, Judge McMahon was precluded from considering the issue of risk of flight. We reject this contention. A district judge

- 16 -

before whom a bail motion is properly made should consider the subsection (g) factors and make the determinations required by § 3142. We see no flawed procedure here.

First, Judge McMahon's view that she could not entertain an appeal from the orders entered by Judge McKenna was correct. A judge of "the court having original jurisdiction over the offense" may "[r]eview" a detention order only where the "person [wa]s ordered detained <u>by a magistrate judge</u>, or by a person <u>other than a judge of a court having original jurisdiction over the offense</u> and other than a Federal appellate court." 18 U.S.C. § 3145(b) (emphases added). As both Judge McMahon and Judge McKenna are judges of the court having original jurisdiction over defendants' offenses, neither is authorized to review a detention order issued by the other.

Second, the reconsideration motions made to Judge McKenna were properly referred to Judge McMahon. "In a criminal case, after an indictment has been returned by the Grand Jury . . . , the magistrate judge on duty will randomly draw the name of a judge in open court from the criminal wheel, and assign the case to said judge <u>for all purposes thereafter</u>." S.D.N.Y. Local Rule 8(a) (emphasis added).

Finally, we see nothing in the Bail Reform Act to suggest that a judge to whom a criminal case is assigned for all purposes may not fully consider all of the § 3142(g) factors when presented with a motion for pretrial release. Indeed, as set out above, when such a judge perceives a serious risk that a defendant will

- 17 -

flee, he or she is authorized to convene a detention hearing "upon [his or her] own motion." 18 U.S.C. § 3142(f)(2)(A). Implicit in this provision is the concept that the judge in charge of the case is not bound by prior rulings as to risk of flight.

Accordingly, we reject defendants' contentions that Judge McMahon was bound by Judge McKenna's view that the bail packages proffered by English and Anderson were sufficient to assure against the risks that they would flee.

C. English's Contention that the Writing Requirement Was Not Met

We also reject English's contention that his detention order should be vacated because it was not accompanied by written findings, as required by § 3142(i)(1). While we have not, in a published opinion, ruled on the contours of the writing requirement in that section, we have determined that a transcript of the court's findings and reasons will satisfy a writing requirement in the context of a bail revocation proceeding under 18 U.S.C. § 3148. See United States v. Davis, 845 F.2d 412 (2d Cir. 1988). Although we noted in Davis that § 3148 is silent as to what a revocation order must contain, we found guidance in § 3142(i)(1). We held that § 3142(i)(1)'s requirement that the court's findings and reasons for ordering detention be stated in writing should be equally applicable to an order revoking release pursuant to § 3148, Davis, 845 F.2d at 415, for "[w]hether an individual is detained without bail pursuant to § 3142 or § 3148, the result is the same," 845 F.2d at 414. A requirement of

written findings is generally intended to ensure that the district court's reasons for its decision are sufficiently clear to permit meaningful appellate review, and in remanding for such findings in Davis we stated that "the district court's findings and its reasons for revocation and detention . . . may be embodied in a transcript of the proceedings," id. at 415. Cf. United States v. Barth, 899 F.2d 199, 201 (2d Cir. 1990) (transcript satisfies a probationer's due process entitlement to "'a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation'" (quoting Black v. Romano, 471 U.S. 606, 612 (1985))), cert. denied, 498 U.S. 1083 (1991).

Here, as in Davis, we see no meaningful distinction between detention orders and bail revocation orders insofar as the need for written findings is concerned. And we conclude, in accord with Davis, that where the court's findings and reasons for issuing a detention order are clearly set out in the written transcript of the hearing, the requirement of a writing is satisfied. The transcripts in the present case met this standard.

D. The Alleged Bias

Defendants' contention that Judge McMahon was "predisposed" to deny their bail motions is based principally on the judge's statement at the June 9 status conference that "I must tell you in a 27-kilo case I don't think I've ever let anybody out" (June 9 Tr. 5). In considering a claim of judicial bias, we review the court's comments and rulings in the context of the

record as a whole, see, e.g., United States v. Rosa, 11 F.3d 315, 343 (2d Cir. 1993), cert. denied, 511 U.S. 1042 (1994); and even "expressions of impatience, dissatisfaction, annoyance, and even anger" would not establish bias or partiality, Liteky v. United States, 510 U.S. 540, 555-56 (1994).

We see no basis in the above-quoted statement or any other statement by Judge McMahon, whether viewed singly or in combination, for an inference that she held any impermissible bias. Rather, the record shows that when English and Anderson requested a bail hearing, she immediately sought to schedule it. A separate hearing was eventually held for each defendant. At each hearing, addressing the point that the after-acquired laboratory evidence revealed that what had been found in the stash house were not a machine gun and a silencer, as had been represented in opposition to the prior bail motions, Judge McMahon promptly stated that she would not consider the gun. Neither defendant has called to our attention any defense argument that was not considered. Judge McMahon reviewed the bail packages proffered by English and Anderson and noted that they were, respectively, "extraordinarily strong" (English Tr. 14) and "incredibly strong" (Anderson Tr. 18). Judge McMahon simply concluded, as she was entitled to do, that other factors outweighed the proffered bail packages in the analysis of flight risk and community safety. Her reasons were explicitly tied to the facts before the court and were fully explained on the record. The record does not support defendants' claims of bias.

## E.  The Merits

Finally, as to the merits, neither defendant makes any concrete argument as to error in the district court's findings, and we see no basis on which to overturn them.  Both English and Anderson are charged with offenses under 18 U.S.C. § 924(c); that charge triggers the § 3142(e) presumption against bail.  Both are charged with drug-trafficking conspiracy in violation of 21 U.S.C. § 846 which, in light of their prior felony convictions, exposes them to mandatory minimum prison terms of 20 years; that charge too triggers the presumption against bail, and the case against each defendant seems quite strong.

As set out in greater detail in Part I.B. above, Judge McMahon considered the § 3142(g) factors--summarized in Part II.A. above--that were relevant to each defendant.  Although Judge McMahon's findings were more extensive with respect to risk of flight than to danger to the community, both concerns are reflected in her findings.  With respect to Anderson, she noted that "the danger of the community or to individuals is manifest from the charge," and that the proposal for electronic monitoring did not eliminate the danger that he would "engage in further sale of narcotics" by telephone with a willing collaborator.  (Anderson Tr. 18.)  As to English, Judge McMahon pointed out that he and his codefendants were equipped for drug dealing and violence; she stated that "that, alone, would be enough for me to keep [English] in" (English Tr. 13); and she found that his record suggested a

"strong possibility of recidivism" (id.)--plainly a reference to the danger of continued narcotics trafficking, not to the risk of flight.

We conclude that Judge McMahon's findings were amply supported by the evidence and that her orders of detention were proper substantially for the reasons stated on the record.

CONCLUSION

We have considered all of defendants' contentions in support of their appeals and of their motions to have this Court grant them release on bail, and we have found them to be without merit. The orders of the district court are affirmed. The bail motions are denied.