12-307-cr (L)
United States v. Shelikhov

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of March, two thousand twelve.

PRESENT:  RALPH K. WINTER,
          REENA RAGGI,
               *Circuit Judges*,
          JED S. RAKOFF,
               *District Judge*.[*]

------------------------------------------------------------------------

UNITED STATES OF AMERICA,
          *Appellee*,

       v.                                Nos. 12-307-cr (L);
                                       12-514-cr (CON)

MAKSIM SHELIKHOV,
          *Defendant-Appellant*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT:    MICHAEL SHAPIRO (Alan S. Lewis, Melissa J. Erwin, *on the brief*), Carter Ledyard & Milburn LLP, New York, New York.

APPEARING FOR APPELLEE:    STEPHEN J. MEYER (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

---

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from orders of the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the orders issued on December 21, 2011, and February 6, 2012, are AFFIRMED.

Maksim Shelikhov, who stands indicted for conspiracies to engage in health care fraud, money laundering, and health care kickbacks, see 18 U.S.C. §§ 1347, 1349, 1956(h); 42 U.S.C. § 1320a-7b(b)(2), as well as substantive health care fraud, see 18 U.S.C. § 1347, and money laundering, see id. § 1956(a), appeals from orders denying him bail pending trial. We review bail determinations for clear error, see United States v. English, 629 F.3d 311, 319 (2d Cir. 2011), and we will not reverse "unless on the entire evidence we are left with the definite and firm conviction that a mistake has been committed." United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotation marks omitted). In applying these standards, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm both bail orders.

Shelikhov, a native of Ukraine and a naturalized United States citizen, does not seriously challenge the district court's determination that release on a personal recognizance bond is not warranted in this case. See 18 U.S.C. § 3142(b) (requiring such release unless court determines it will not reasonably assure defendant's appearance or will endanger safety of any other person or community). Rather, Shelikhov challenges the court's preponderance

2

determination that no condition or combination of conditions would reasonably assure his appearance, thereby requiring pre-trial detention. See id. § 3142(e)(1), (g). Shelikhov maintains that his appearance was adequately assured by a $2.5 million bond, to be co-signed by six friends, each of whom earns approximately $50,000 a year, and to be secured by jewelry belonging to his fiancée valued between $600,000 and $970,500,[1] as well as by a Florida vacation property worth approximately $275,000 and owned by the fiancée's brother, who resides in Ukraine. Further, Shelikhov and his fiancée agreed to surrender their passports, and Shelikhov agreed to home detention with electronic monitoring.

Having reviewed the record, we identify no error in the district court's finding that neither this particular bail package nor any other combination of conditions of release would adequately assure Shelikhov's appearance. Such a conclusion was supported by the nature of the crimes charged, involving a sophisticated fraud scheme against the United States; by Shelikhov's alleged leadership role in those crimes; and by the extraordinary proceeds realized therefrom, totaling approximately $50 million, with Shelikhov personally receiving unrecovered funds totaling more—perhaps much more—than $2.5 million. It is further supported by the fact that, if convicted, Shelikhov faces maximum 20-year prison sentences on each of the two charged money laundering counts, 10-year prison sentences on each of the two health care fraud counts, and a 5-year prison sentence on the health care kickback

---

[1] The wide discrepancy here is largely caused by a dispute between the parties over whether immediate liquidation value or appraised market value of property is the proper measure for bail purposes. We need not and do not resolve this dispute.

conspiracy count. See id. § 3142(g)(1). The likelihood of Shelikhov's conviction also appears strong in light of government evidence expected to include both confederates' direct testimony that Shelikhov controlled Bay Medical Care PC, SVS Wellcare Medical PLLC, and SZS Medical Care PLLC (collectively, "Bay Medical"), the entities through which the fraud was orchestrated, and documentary evidence that Shelikhov controlled, at least in part, the Bay Medical bank accounts from which large sums were transferred into his personal accounts and used to pay his personal debts. See id. § 3142(g)(2). These circumstances permitted the district court to find that Shelikhov had both a strong motive to flee and the means to finance flight. See id. § 3142(g); United States v. Sabhnani, 493 F.3d at 76–77.

Moreover, record evidence supported a reasonable conclusion that flight—specifically, flight to Ukraine—"would impose no insurmountable personal or professional hardship on" Shelikhov. United States v. Sabhnani, 493 F.3d at 76. Shelikhov has extensive personal and business ties there. Indeed, shortly before his arrest, Shelikhov spent approximately sixteen months traveling and working as a consultant in Ukraine and other parts of Europe. See United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (relying, inter alia, on defendant's "extensive history of travel and residence in other countries" to support flight risk finding).[2] Further, Shelikhov's mother appears to have fled the United States to Ukraine as a result of the government's investigation into fraud at Bay Medical, and moreover, Shelikhov's fiancée's parents and brother have all long resided in Ukraine.

---

[2] Like the district court, we recognize that Shelikhov advised federal authorities of planned travel outside the United States after becoming aware that they were looking for his mother in connection with possible criminal activity at Bay Medical. No request was then made that he remain in the United States.

4

In these circumstances, we identify no clear error in the district court's rejection of the proposed bail package as inadequate to ensure Shelikhov's appearance. While Shelikhov's fiancée proposed to secure the bond with valuable pieces of jewelry—apparently given to her as 20th birthday presents by her parents—such items hardly equate to a primary residence or life savings, the loss of which might be expected to exert some "moral suasion" over a defendant to honor his bail bond. United States v. Martinez, 151 F.3d 68, 71 (2d Cir. 1998). The same conclusion obtains with respect to a Florida vacation property owned by a resident of the Ukraine. Indeed, the only suretor who proposed to post his or her own primary residence in the United States to secure Shelikhov's bail withdrew the offer after the district court explained the possible consequences of defendant's failure to appear. In any event, in light of the vast unrecovered proceeds from the charged fraud scheme, the district court could reasonably have concluded that Shelikhov was in a position to compensate any suretors who sustained a loss as a result of his flight.

Further, the district court did not clearly err in finding that the circumstances of Shelikhov's return to the United States raised further concern as to the possibility of flight. Although Shelikhov faults the district court's finding that his return was involuntary, the record supports that determination. On September 23, 2011, Shelikhov purchased a one-way ticket to fly from Kiev, Ukraine to Newark, New Jersey through Frankfurt, Germany on October 4, 2011. Rather than fly to Newark on October 4, 2011, however, he that day purchased a one-way ticket to fly from Kiev to Toronto in November. When, on arrival, Canadian immigration officials confronted Shelikhov about a possible United States warrant

for his arrest, he lied about his identity.[3]  Discovering the deception, Canadian officials denied him entry into that country and escorted him onto a plane to New York.  These circumstances hardly demonstrate a voluntary return to this country.  Nor was the district court obliged to reach a contrary conclusion based on counsel's belated revelation that she had asked Shelikhov to travel to Toronto so that they could meet in a non-custodial setting before Shelikhov returned to the United States.  The circumstances easily support an inference that Shelikhov was maintaining the option of <u>not</u> returning to the United States to answer the pending charges, a circumstance that, when considered together with others already noted, supported the district court's decision to deny bail.

Our decision in <u>Sabhnani</u>, relied on by Shelikhov, is not to the contrary.  In that case, unlike here, the government's contention that no conditions of release could prevent defendants' flight was "undermine[d]" by the government's own submissions proposing additional, unusual conditions of release that defendants promptly agreed to accept.  <u>United States v. Sabhnani</u>, 493 F.3d at 78.  Our decision in <u>United States v. Chimurenga</u>, 760 F.2d 400 (2d Cir. 1985), also relied on by Shelikhov, only confirms the deference we accord to district court decisions to grant or deny bail, <u>see</u> <u>id.</u> at 405–06.

---

[3] In his brief, Shelikhov suggests that when Canadian officials confronted him about whether he was wanted here, he merely "truthfully responded that he did not know." Appellant's Br. at 7.  In light of Shelikhov's explanation that he went to Canada for the very purpose of discussing a possible United States arrest with his counsel in a non-custodial setting, any characterization of even this admitted statement to Canadian authorities as "truthful[]" tests credulity. <u>Id.</u>

In sum, because we identify no clear error in the district court's factual findings, see United States v. English, 629 F.3d at 319, and are not left with the definite and firm conviction that a mistake has been committed, see United States v. Sabhnani, 493 F.3d at 75, the district court's orders denying bail are hereby AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court