18-923-cr
United States v. Esposito

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 11th day of September, two thousand eighteen.

PRESENT: RALPH K. WINTER,
           JOHN M. WALKER, JR.
           CHRISTOPHER F. DRONEY,
               *Circuit Judges*.

─────────────────────────────────────────────

UNITED STATES OF AMERICA

        *Appellee*,

      v.                        No. 18-923-cr

VINCENT ESPOSITO,

        *Defendant-Appellant*,

STEVEN ARENA, FRANK GIOVINCO, FRANK COGNETTA, VINCENT D'ACUNTO, JR.,

        *Defendants.*[*]

─────────────────────────────────────────────

FOR DEFENDANT-APPELLANT:    MARC FERNICH (Jonathan Savella, *on the brief*), Law Office of Marc Fernich, New York, NY.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Jeffrey H. Lichtman and Jeffrey Einhorn, Law Offices of Jeffrey Lichtman, New York, NY.

FOR APPELLEE: JASON M. SWERGOLD, Assistant United States Attorney (Kimberly J. Ravener, Jared Lenow, and Sarah K. Eddy, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED.**

Defendant-Appellant Vincent Esposito appeals from an April 18, 2018, order of the United States District Court for the Southern District of New York (Marrero, *J.*) setting the conditions of his pre-trial release. Specifically, he challenges a condition requiring him to pay for an armed guard to be stationed outside of his residence to ensure compliance with home confinement. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Esposito and others were charged with racketeering conspiracy and extortion conspiracy. The indictment alleges that Esposito is a member of the "Genovese Family," which is a part of "La Cosa Nostra," commonly referred to as the "Mob" or the "Mafia." Esposito, along with his codefendants, allegedly committed multiple acts of theft and extortion, including threatening physical harm to a labor union official if he did not make annual "tribute" payments to the Genovese Family.

The Government sought to detain only Esposito pending trial—citing primarily his alleged leadership role and significant personal wealth—and consented to the release of his codefendants subject to various conditions. Following a hearing, the magistrate judge assigned to the case (Moses, *M.J.*) ordered Esposito released subject to certain conditions, including home confinement with electronic monitoring and the posting of a $6 million personal recognizance bond secured by a Manhattan townhouse owned jointly by Esposito, his siblings, and their mother.

The Government appealed the magistrate judge's order of release related to Esposito to the district judge. At a January 26, 2018 hearing before Judge Marrero, the Government argued that Esposito's substantial wealth—his total net worth possibly exceeds $13

million[1] and $3.8 million[2] was found during a search of his home—his alleged leadership role in the Genovese family, and a Guidelines range sentence of five to six years if convicted, established that Esposito was a flight risk and should be detained. The Government also argued that Esposito presented a danger to the community if released based upon the Genovese Family's history of violence, Esposito's leadership role in the Family, his involvement in extortion offenses, his ability to continue to organize illegal activity if placed in home confinement, and the presence of a firearm in Esposito's residence. In response, Esposito argued that given his lack of criminal history and ties to the area, home detention, coupled with a bond secured by a home in which Esposito has lived for the past 35 years with his mother and sister, was sufficient to secure his appearance. He also challenged the Government's evidence regarding his leadership role and proffered that the gun was inoperable,[3] concluding that he presented no greater danger to the community than his codefendants, who were released. The district judge adjourned the proceedings to give the parties time to explore the feasibility of using video surveillance or armed guards to enforce the condition of home confinement, and for Esposito to provide additional information about his personal finances.

After additional requests to adjourn were granted, the hearing resumed on March 2, 2018. Both sides renewed their respective arguments regarding whether Esposito should be released, and debated the effectiveness of an unmonitored video surveillance system. After hearing argument, the district court found that "a bail package can be developed that will allow for Mr. Esposito to be released." App. 176. The court concluded, however, that in light of new information regarding Esposito's net worth and the amount of currency recovered from Esposito's residence, the conditions ordered by the magistrate judge were insufficient. The hearing was adjourned to allow the parties time to negotiate terms and conditions acceptable to the court, to likely include video surveillance and/or an armed guard, as well as to provide Esposito an opportunity to disclose additional financial information.

On March 9, 2018, Esposito's counsel informed the court via letter that the parties had agreed on most of the terms of a release agreement, including home detention with electronic monitoring, installation of a video surveillance system that would monitor the front and rear doors of Esposito's townhouse and send an alert to law enforcement when motion was detected, and an increased bond amount of $9.8 million. The parties could not, however, agree on whether an armed guard posted around the clock at Esposito's residence and paid for by Esposito should be a condition. According to Esposito, the cost of an armed guard would be between $764,400 and $1,179,360 per year. As an alternative, Esposito

---

[1] Esposito apparently attempted to conceal the extent of his wealth from Pre-Trial Services, reporting a total net worth of $700,000.

[2] At the time of the hearing before the magistrate judge, the cash in Esposito's home was still being counted. The Government's estimate was that the total amount was over $1 million.

[3] The district court concluded that the firearm "appear[s] to have been inoperable," and did not consider it in setting Esposito's conditions of release. *United States v. Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018).

agreed to pay for a private company to monitor the video surveillance feed at a cost of up to $218,400.

At a March 23, 2018 hearing, the district court set a trial date of September 24, 2018. The court then ruled that "on the basis that the matter is going to trial in a period of roughly six months," an armed guard was an appropriate condition of release, and ordered Esposito's release subject to the conditions of, *inter alia*, home confinement and an armed security guard.[4] App. 191. In a subsequent written order, the court found that "Esposito poses some danger to the community" based upon his role in the Genovese family and the crimes involving threats of violence with which he was charged and was a flight risk based upon his significant financial resources and possibility of additional unknown wealth. *Esposito*, 309 F. Supp. 3d at 31–32. Pre-trial detention was, however, unnecessary, because home confinement and limits on Esposito's ability to communicate with others mitigated his dangerousness, and home confinement monitored by an armed guard, surveillance cameras, and electronic monitoring, along a $9.8 million bond, sufficiently reduced his risk of flight.[5] *Id.* With respect to the armed guard condition, the court rejected Esposito's argument that a monitored video surveillance system would sufficiently reduce the flight risk that he poses, reasoning that if he chose to flee, he could "functionally disappear" before law enforcement could respond. *Id.* at 32. Finally, the district court held that the cost of the armed guard was not unreasonable with a trial date only six months away, as the cost of an armed guard for six months—approximately $382,200—was not significantly more than the cost of the video surveillance monitoring that Esposito had agreed to pay. *Id.* at 32 n.1.

Esposito filed a timely notice of appeal and challenges the armed guard condition. "We review a district court's findings as to the accused's risk of flight and potential danger to the community for clear error," *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011), reversing only if we are "left with the definite and firm conviction that a mistake has been committed," *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal quotation marks omitted).

Esposito raises two arguments on appeal. First, he argues that requiring the installation of armed guards absent the consent of the defendant is an unlawful condition.

---

[4] The full list of conditions is as follows: (1) a $9.8 million bond secured by, *inter alia*, Esposito's residence; (2) access to residence limited to pre-approved guests; (3) no use of cell phones or computers without the court's or government's permission; (4) home detention with GPS monitoring; (5) permission for the Government to search Esposito's residence to ensure compliance with release conditions; (6) no contact with co-defendants or witnesses; (7) surrender of travel documents; (8) installation of video monitoring at Esposito's residence, with law enforcement access to the feed; (9) an armed guard posted at Esposito's residence on a 24-hour basis; and (10) strict pretrial supervision.

[5] Because the armed guard condition was imposed to reduce the risk of flight, not dangerousness, *see Esposito*, 309 F. Supp. 3d at 32, we do not address what impact, if any, the armed guard condition has on any danger Esposito may pose to the community.

Second, he argues that the district court erred in setting a condition that seeks to ensure Esposito's presence to a degree of absolute certainty. We address these arguments in turn.

In *Sabhnani*, we concluded that home detention enforced by private security guards—a condition to which the defendants consented—was sufficient (along with other conditions) to ensure the defendants' presence, and accordingly vacated the district court's detention order. 493 F.3d at 78. We declined to address "whether it would be contrary to principles of detention and release on bail to allow wealthy defendants to buy their way out by constructing a private jail," i.e., whether home confinement enforced by private security guards was a lawful condition of release, since the Government did not raise such an argument. *Id.* at 78 n.18 (internal quotation marks omitted). We noted, however, that economic equality concerns were not present in that case because the defendants' wealth was a significant contributor to their flight risk, and "defendants of lesser means, lacking the resources to flee, might have been granted bail [without such a condition] in the first place." *Id.* Here, like in *Sabhani*, Esposito's considerable wealth and apparent attempts to conceal it from Pre-Trial Services are significant reasons Esposito presents a flight risk. Also, because this is not a case where an indigent defendant might be detained while a wealthy defendant could be released with a private security guard condition, requiring Esposito to pay for a private security guard does not give rise to concerns of economic inequality. In sum, district courts are not required to consider private security guards as a condition of release, *see United States v. Banki*, 369 F. App'x 152, 153–54 (2d Cir. 2010) (summary order), but they are not precluded from doing so when the defendant has substantial resources and such wealth contributes to his risk of flight.

Turning to Esposito's second argument, his contention that the district court "implicitly misread the Bail Reform Act to require *perfect certainty* of appearance by the *most restrictive* conditions ostensibly available—rather than *reasonable assurance* of appearance by the *least* restrictive ones," Appellant's Br. 19, is incorrect. The district court, in its written decision, identified the correct legal standard, namely that a court must impose "'the least restrictive [] condition, or combination of conditions' that will 'reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.'" *Esposito*, 309 F. Supp. 3d at 30 (alterations in original) (quoting 18 U.S.C. § 3142(c)(1)(B)). The court first found that Esposito was a flight risk based upon the $3.8 million in cash found in his home, the "high probability that Esposito has access to significant amounts of other liquid assets," and "substantial evidence that Esposito exercises some degree of control over the Genovese Family slush fund, which, according to the Government, is kept for the purpose, among other things, of helping members of the Genovese Family flee when faced with criminal prosecution." *Id.* at 31. It then considered alternatives less restrictive than home confinement monitored by a private security guard, specifically home confinement with video surveillance monitoring. *Id* at 32. The court ultimately rejected such a less restrictive alternative, finding that "[g]iven Esposito's extensive resources and his alleged network of criminal associates, if Esposito chose to flee, he would likely have the means to functionally disappear before law enforcement

agents could respond to a call that he was caught doing so by a video surveillance system." *Id.* Such a condition was required "to provide *reasonable* assurances"—i.e., not absolute assurances, as Esposito argues on appeal—"that Esposito will not flee." *Id.* (emphasis added). Particularly because Esposito appears to have initially attempted to conceal the scope of his net worth to Pre-Trial Services, we do not find that the armed guard condition constitutes clear error.

As part of this second argument, Esposito also argues that the district court never made findings that he "pose[s] such a grave threat [of flight] as to warrant lethal force." Appellant's Br. 23. In *Sabhani*, we noted that "an expectation that deadly force may need to be used to assure [a] defendant['s] presence at trial" would "demand a defendant's detention." 493 F.3d at 74 n.13. However, like in *Sabhani*, we do not interpret the armed guard condition as authorization for the armed guards to use lethal force against Esposito should he attempt to flee. *See id.* Rather, we presume that the guards are armed principally for their own protection.

Finally, we note that at the time the district court imposed the armed guard condition, it also set a trial date for approximately six months later. That Esposito would only have to pay for approximately six months of security guard monitoring appears to have been a significant factor in the district court's decision to impose the condition. Since then, at the parties' request, the trial date has been adjourned to June 17, 2019. We leave it to the district court to determine what impact, if any, the adjournment of the trial date has on the appropriateness of the armed guard condition.

We have considered Esposito's remaining arguments and conclude that they are without merit. Accordingly, the order of the district court is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6